FIDELITY-PHENIX FIRE INS. CO. v. BOARD OF ED., TOWN OF ROSEDALE, et al.

No. 33182.    Oct. 19, 1948.

Rehearing Denied April 12, 1949.

*204 P. 2d 982.*

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, for plaintiff in error.

Cook & Bingaman, of Purcell, for defendants in error.

GIBSON, J. Defendants in error, as plaintiffs, instituted this action against plaintiff in error, as defendant, to recover upon an insurance policy issued by the latter for loss sustained by reason of damage to a building alleged to have been caused by windstorm. The issue was tried to a jury which rendered a verdict for the plaintiffs in the sum of $2,700. The court awarded plaintiffs judgment for that amount with interest thereon for a period antedating the verdict. Defendant appeals and, as grounds for reversal, contends that the evidence is insufficient to support the verdict, that the court erred in the admission of expert testimony on the cause of the damage and in the allowance of interest. The parties will be referred to herein as they appeared in the trial court.

The building involved was a one-story frame structure 50′ x 80′, with gable roof of corrugated iron, erected for and used as a gymnasium upon school grounds. The amount of the policy was $3,000, of which $2,700 covered the building and $300 the contents. The policy covered damage from fire and "windstorms, cyclones and / or tornadoes."

The damage occurred about 1:30 p.m. on February 27, 1945, when the roof of the building collapsed with the falling of the south end thereof to the floor within the walls. On that day the weather was severe and consequently the school was dismissed at the noon hour. During the previous night and in the morning of that day a snow had fallen variously estimated at from less than five to as much as seven or eight inches. At the time of collapse of the roof it was not snowing, but a wind was blowing termed by witnesses as a "high wind" and "strong wind." There is no evidence of other buildings being injured, but on the premises of another adjoining the school ground a plum tree was blown down. The evidence is to the contrary that there was any defect in the plan of construction or in the material used in the building. Builders, whose qualifications to testify as experts are not questioned though their testimony is objected to on other grounds, testified that in their opinion the cause of the collapse was the force of the wind.

Under the first ground urged for reversal there is quoted the following from 29 Am. Jur. 792, as a statement of the law governing the construction of the policy:

"In the case of a policy against damage by tornado, hurricane, or windstorm, the words 'tornado' and 'hurricane' are synonymous and mean a violent storm distinguished by the ve-

hemence of the wind and its sudden changes. The word 'windstorm' partially takes its meaning from 'tornado' and 'hurricane,' and indicates wind of unusual violence. A 'windstorm' need not have either the cyclonic or the whirling features which usually accompany tornadoes or cyclones, but it must assume the aspect of a storm, that is, an outburst of tumultuous force."

And it is urged that the evidence fails to reflect that the wind was of "tumultuous" character, and as supporting that contention there are cited Sabatier Bros. v. Scottish Union & National Ins. Co. (La. App.) 152 So. 85; Mulgrew Co. v. National Union Fire Ins. Co., 187 Iowa, 1292, 175 N. W. 50, 51; Phenix Insurance Co. v. Charleston Bridge Co. (C.C.A.), 65 Fed. 628, 632; and Williams v. Detroit Fire & Marine Ins. Co., 280 Mich. 215, 273 N. W. 452. None of the cited cases presents a parallel in point of fact and the legal pronouncements therein are merely to the effect that "an ordinary gust of wind, no matter how prolonged, is not a windstorm." They do not purport to furnish any standard by which the facts herein may be measured.

We think the correct standard and applicable to the instant situation is stated in Gerhard v. Travelers Fire Ins. Co., 246 Wis. 625, 18 N.W. 2d 336, as follows:

"In the absence of definition or limitation in the policy, we think that a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property either by its own unaided action or by projecting some object against it. This is especially true where, as here, the more violent forms of windstorm are specifically named as something different from a mere windstorm. Any other view would work an imposition upon the insured. If defendant wishes to adopt some scale which establishes the velocity of wind necessary for a windstorm, or if it desires to limit its liability beyond the point that we have indicated, it should incorporate its proposed standard in the policy by clear terms and such ambiguities as are left in this policy should be resolved against it."

Considering the purpose of the coverage and the field of the risk, it would seem that any wind that is of such extraordinary force and violence as to thereby injuriously disturb the ordinary condition of the things insured is tumultuous in character, and is to be deemed a windstorm within the purview of the policy, in absence of a provision therein to the contrary.

An example of judging the quality of the wind by its effect is to be found in Atlas Assur. Co., Ltd., v. Lies, 70 Ga. App. 162, 27 S. E. (2d) 791, where the court approved an instruction of the trial court wherein it is declared "if you find that the wind blew hard enough to blow a tree down, then that would be the same as a windstorm, if the wind was that hard." We do not hold that the blowing down of the plum tree above referred to establishes the fact of a windstorm as a matter of law, but we do hold that fact to be competent evidence touching the force and violence of the wind and that same together with other matters herein recited were sufficient to sustain the finding of the jury that a windstorm was the proximate cause of the falling of the roof.

In support of the second ground, to the effect the court erred in admission of opinion testimony as to the cause of the roof's falling, there is cited Goodlett v. Williamston, 179 Okla. 238, 65 P. 2d 472, which announces the rule that such testimony is not admissible unless based upon facts established by the evidence, and Great American Life Ins. Co. v. Stephenson, 176 Okla. 295, 55 P. 2d 56, and Sterling Milk Products Co. v. Brown, 173 Okla. 452, 49 P. 2d 68, to the effect that it is error to permit a witness to invade the province of the jury by expressing an opinion on the ultimate fact in issue unless within the exception where expert testimony is admissible. The sole objection made at the trial to each of the several hypo-

thetical questions asked was that of "assuming a state of facts not proven." It is manifest that such objection does not raise the questions discussed in the last two of the cited cases and for that reason we hold there is no basis for the application here of the doctrines thereof. Neither at the trial nor here is there mentioned any fact, assumed in the question, which is contended to be without support in the evidence. And such fact not being apparent from our examination of the record, we do not see that the doctrine of the first cited case has been violated.

As to the alleged error of the court in allowance of interest on the judgment, the following facts are pertinent. It was provided in the policy that the loss was payable 60 days after proof of loss. The verdict rendered represented merely the amount deemed necessary to restore the building and no interest was included. Judgment was rendered for the amount of the verdict with interest thereon from May 15, 1945, at which date under terms of the policy the loss was payable.

Involved in the consideration of the question is a determination of whether section 6 or section 22, of Tit. 23, O. S. 1941, is applicable. The sections are as follows:

"Sec. 6. Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

"Sec. 22. The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

Defendant contends that the question is settled by American Eagle Fire Ins. Co. v. Lively, 142 Okla. 246, 286 P. 797. That case was an action on an insurance policy to recover for loss by fire. The case was tried to a jury and upon verdict for plaintiff the court awarded judgment for the amount thereof together with interest from date of filing suit. The allowance of interest was challenged on appeal. We there held that section 6 was applicable, and construing its effect we held:

"Interest cannot be recovered upon unliquidated damages, where it is necessary for a judgment or verdict to be had in order to ascertain the amount of the same. St. Paul Fire & Marine Ins. Co. v. Robison, 72 Okla. 269, 180 P. 702."

Plaintiffs' response is twofold. First, that even if section 6 is applicable, as held in the Eagle case, it does not follow that the pronouncement therein is controlling in view of the holding in Hartford Fire Ins. Co. v. Bernard, 99 Okla. 44, 221 P. 1011, which is not questioned in the Eagle case. In the Hartford case, which was an action on a policy for loss of car by fire, tried to a jury, it was held that interest on the loss found by the verdict was properly allowable from the time loss was payable under the policy where the amount of the loss was capable of being made certain by computation. It was there held that an established market value was sufficient for the calculation. And it is contended that in the instant case the cost of both the labor and materials necessary to restore the roof is no less referable to standards of value susceptible of proof than in the Hartford case and that it is the absence of a like situation in the Eagle case which is the basis of that decision as appears from the following statement therein:

"Considering the nature of the property destroyed and the difficulty in ascertaining the actual or fair value thereof, we think interest should not have been allowed until the claim was reduced to judgment."

Secondly, the soundness of the holding in the Eagle case as a precedent is questioned on authority of the holding

in Concordia Insurance Co. of Milwaukee v. School District No. 98 of Payne County, Oklahoma, 282 U. S. 545, 75 L. Ed. 528. Therein the school district sued on an insurance policy for loss of a building and the furniture and fixtures therein by fire. The trial court awarded interest from time loss was payable. On appeal the Circuit Court of Appeals held that section 5977, Comp. Okla. Stat. 1921 (same as section 22 quoted above) was applicable and affirmed the trial court. Subsequently the decision of this court in the Eagle case was rendered and the same was urged on the appeal of the United States Supreme Court as determinative of the question and controlling upon the federal court. The Supreme Court, while recognizing the general rule that a federal court will follow the decisions of the highest court of a state in construing a state statute, held that at the time of trial the decisions of the state court were in such confusion that the meaning of the statutes could not be definitely determined and hence afforded no guide. The court further held that the decision in the Eagle case, being handed down since the trial in the federal court, could not be given retroactive effect but expressed doubt whether the decision in the Eagle case settled the question in view of the emphasis therein placed upon the nature of the property destroyed and the difficulty of ascertaining the value thereof which need not apply where there was involved the value of a house destroyed or the cost of the replacement thereof, in view of other decisions of this court.

We think the court's questioning whether the Eagle case settled the question was justified and that same is applicable here even if it be considered that section 6, supra, is controlling. In the Eagle case the property destroyed consisted of household furniture and a library. After the fire about 350 volumes were identified. It was contended, but disputed, that the library contained 912 volumes. The evidence of the existence of the books and their

values was on the testimony of the insured who based his conclusions in part on catalogue prices as to some and his memory as to the price paid for others. In view of the language of the court it is manifest that the absence of standards of value to which recourse could be had was the controlling consideration in the mind of the court and that same was not to be deemed applicable where such standards obtain. Therein no reference is made to Hartford Fire Ins. Co. v. Bernard, supra, where interest was allowed from time loss was payable where the loss was an automobile destroyed and the value thereof could be established on the basis of a market value. Nor is there reference made to Midland Valley R. Co. v. Price, 127 Okla. 106, 260 P. 26, 31, where, pertinent to the facts in the Concordia case and here, it is said:

"The original cases on the subject make a distinction between unliquidated claims, which may be determined by fixed standards, such as current wages for repairing damages to property, the value of materials to replace destroyed property, and the like and unliquidated claims, which may not be determined entirely by fixed standards, but which must be left to the sound judgment and discretion of the jury. In the former case, interest is allowable, while in the latter it is not. The reason for the rule is that in the latter case the person against whom the claim is made cannot ascertain the amount chargeable against him until the same has been judicially determined."

But, in view of the lack of clarity in the earlier decisions and the apparent force of the holding by the Circuit Court of Appeals that the question of interest is controlled by said section 22, we think it well to re-examine the question.

The decision in the Eagle case, holding section 6, supra, to be applicable and controlling, is based solely upon the doctrine announced in St. Paul Fire & Marine Ins. Co., etc., v. Robison,

72 Okla. 269, 180 P. 702, and Schaff v. Hudgins, 96 Okla. 173, 221 P. 90.

The Robison case was an action on an insurance policy for damage to crops by hail. The court instructed the jury that if they found for the plaintiff they should further allow interest from a date prior to the judgment. On the appeal this instruction was attacked as violative of section 2848, Rev. Laws of 1910, same as section 6, supra. This court sustained the attack solely upon authority of City of Chickasha v. Hollingsworth, 56 Okla. 341, 155 P. 859. The Hollingsworth case did not involve liability under an insurance policy nor the failure to discharge a money obligation express or implied and involved the damage sustained by a contractor as a result of the delay by the city in furnishing materials necessary to the performance by the contractor of his contract. The court there held section 6 to be applicable because the damage was unliquidated and interest not recoverable because the amount thereof was not ascertainable without the verdict of the jury.

In Schaff v. Hudgins, supra, there was involved damage sustained by a shipper to cattle through failure of the carrier to exercise ordinary care in the dipping of cattle in transit and so sounded in tort.

In none of these cases relied on as authority for the holding in the Eagle case did the court consider the applicability of section 22, supra, nor does it appear that same was called to the attention of the court. And the same is true as to Hartford Fire Ins. Co. v. Bernard, supra.

Interest as such is only recoverable under terms of a contract. Where, by the terms of contract, no provision is made for the payment of interest after maturity of the obligation an award of interest for the detention of payment is made by the way of damages. And it is a rule of general recognition by the courts, and obtains in this jurisdiction, that where there is a contract to pay money on a day certain, or on a day not set but ascertainable from the terms of the contract, interest will be allowed from such date. 25 C. J. S. 538, §52; 17 C. J. 919, §§207 and 208; City of Shawnee v. Freauff, 36 Okla. 280, 128 P. 255. The application of this rule in actions on insurance policies is stated in 46 C. J. S. 692, §1391, as follows:

"In accordance with general rules governing the recovery of interest as damages in actions for breach of contract, as discussed in Damages, Secs. 51, 52, where the amount to which plaintiff is entitled under an insurance contract is wrongfully withheld by the insurer after payment is due, interest on such amount may be allowed as damages in an action on the policy, sometimes by virtue of statute expressly provided for the payment of interest. . . .

"In accordance with the general rule, sometimes by reason of statute, unless the policy provides otherwise, interest on the amount to which plaintiff is entitled should be allowed from the time when, under the terms of the policy, it was due and payable, but not before."

If the obligation under the insurance contract is one to pay money and default in the payment justifies the allowance of interest under such rule, it is manifest same not only falls within the purview of said section 22, supra, but that the allowance of interest becomes mandatory by force of the statute. The insurance policy is an express contract to pay money and the action is to recover what is owing thereunder. The fact that the amount owing is not fixed by the policy does not change the nature of the obligation nor justify the defendant in withholding payment until the amount thereof is liquidated in an action therefor. Under the terms of the policy the amount is deemed to be, and in contemplation of law is, ascertainable. Such being true, for the purpose of this case there applies the maxim "that is sufficiently certain which is capable of being made certain." Since under the terms of the policy there devolved upon defendant

the need to ascertain the amount in order to perform its obligation to pay, default in the payment cannot be predicated upon ignorance of the amount where such ignorance is due solely to its default in the ascertainment.

The underlying reason for not allowing interest on demands that are within the purview of section 6 is that the person liable does not know what sum he owes and therefore can be in no default for not paying. City of Chickasha v. Hollingsworth, supra. Hence, under our construction of the insurance contract the issue as to interest does not fall within the purview of section 6, but does fall within that of section 22, even if certainty in the amount owing is required thereby.

We consider the holding in the quoted text fortified by the authorities cited and that same is sound. To the effect that the question of the allowance of interest in such cases is not controlled by the rule declared in section 6, supra, it is said in J. Purdy Cope Hotels Co. et al. v. Fidelity-Phenix Fire Ins. Co., 126 Pa. Super. 260, 191 Atl. 636:

"There is nothing in the opinion in 108 Pa. Superior Ct. 148, to warrant the assumption that we regarded an action on a policy of fire insurance as at all similar, in respect to the right to recover interest, to an action in tort for unliquidated damages, or other actions 'where the damages are not capable of exact computation, both as to time and amount,' such as was referred to by Mr. Justice Mitchell in Richards v. Citizens' Nat. Gas Co., 130 Pa. 37, 39, 18 A. 600."

And, to the further effect that section 22, supra, should be deemed controlling, it was said in Aetna Life Ins. Co. v. Wade, 210 Ala. 170, 97 So. 636:

"The question of interest so far as bears upon the instant case is regulated by section 4620 of the Code of 1907. In Vincent v. Gilmer, 51 Ala. 387, the court said:

" 'The statutes of this state substitute interest for damages allowed at common law for the detention of the debt. . . . It is intended as just compensation for withholding the principal, and accrues only from the time the principal is due and payable.'

"The law existing at the time of the issuance of this policy entered into and became a part of the contract, and under the provisions of the foregoing statute we think interest was demandable from the time the policy was due and payable by virtue of the contract entered into."

We hold that section 22, supra, is applicable and controlling and that by reason thereof plaintiffs were entitled as a matter of right to interest on the judgment from the time loss was payable under the terms of the policy.

We further hold that section 6, supra, is not applicable to the question of recovery of interest in such actions as here involved, and that American Eagle Fire Ins. Co. v. Lively, supra, and Hartford Fire Ins. Co. v. Bernard, supra, in so far as they hold that the allowance of interest on the amount adjudged owing under insurance policy is controlled by Tit. 23, O.S. 1941 §6, are overruled.

Judgment affirmed.

HURST, C.J., and RILEY, BAYLESS, WELCH, CORN, ARNOLD, and LUTTRELL, JJ., concur.